## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JACKIE A.,** )  | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 20-CV-253-JED-CDL** |
| ) | |
| **KILOLO KIJAKAZI,** ) | |
| **Commissioner of the** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendant.**[1] ) | |

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The matter has been referred to the undersigned for report and recommendation. For the reasons set forth below, the undersigned **recommends** that the decision of the Administrative Law Judge (ALJ) be **affirmed**.

I.      **Legal Standards**

A.      **Five-Step Agency Process**

The Social Security Act (Act) provides disability and disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), Kilolo Kijakazi is substituted as the defendant in this action, effective upon her appointment as Acting Commissioner of Social Security in July 2021. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See id.* § 423(d)(1)(A).

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920 (a)(4)(i)-(v). A finding that the claimant is disabled or is not disabled at any step ends the analysis. *See id.*; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). At step one, the ALJ determines whether the claimant is engaged in any substantial gainful activity. A person who is performing substantial gainful activity is not disabled. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. A claimant who does not have a severe impairment is not disabled. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. §§ 404.1520(d), 416.920a(d)(2); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). If the claimant has an impairment that meets all the criteria of a Listing, the claimant is disabled. Otherwise, the ALJ proceeds to step four.

At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work. If the claimant can perform her past relevant work, she is not disabled. Step four is comprised of three distinct phases.

*See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence." 20 C.F.R. § 416.920(e). Second, the ALJ determines the physical and mental demands of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1023 (citing 20 C.F.R. § 404.1520(e)). Finally, the ALJ determines whether the RFC found in phase one allows the claimant to meet the job demands found in phase two. *Winfrey*, 92 F.3d at 1023 (citing Social Security Ruling (SSR) 86-8). If the claimant can perform her past relevant work, she is not disabled.

The claimant bears the burden on steps one through four. *Lax*, 489 F.3d at 1084. If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id.*

**B.     Standard of Review**

Judicial review of a Commissioner's disability determination "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence

is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.   Background

### A.   Plaintiff's Allegations

Plaintiff filed for Supplemental Security Income (SSI) benefits in 2016, when she was 42 years old. Plaintiff alleges that her mental impairments—which include schizophrenia, panic disorder, anxiety, depression, bipolar disorder, and attention deficit hyperactivity disorder (ADHD)—prevent her from working. (R. 102).[2] At one time, Plaintiff took medication for ADHD, bipolar disorder, schizophrenia, and panic disorder, without adverse side effects. (R. 21). However, she testified that she stopped taking medication in March 2019. (R. 22).

Plaintiff alleges intellectual disability equivalent to mild mental retardation. (Doc. 18 at 7; *see* R. 48-49). Plaintiff graduated from high school in 1992 with a 1.23 grade point average, placing her rank at 144 out of 154 graduates. (R. 46-48; *see* R. 277-278). While

---

[2]     Plaintiff also has physical impairments of degenerative disc disease, obesity, and degenerative joint disease of the bilateral knees. (*See* R. 17). However, the issues in this appeal relate solely to Plaintiff's mental impairments and functioning. (*See* Pl.'s Br., Doc. 18; *see also* R. 43).

in school, she did not receive special education services or have to repeat a grade, but she attended summer school one year. (*See* R. 46-48, 55-56).

Plaintiff received a certified nursing assistant (CNA) license when she was in her 20s. (R. 57). She can read, but testified that she has trouble concentrating and recalling information. (R. 56). She said these problems have interfered with her ability to perform tasks at work. (R. 59-60). Plaintiff said that she is capable of filling out a job application, but she hasn't tried to get a job "in a while." *Id*. She testified that, due to her schizophrenia, "I don't really leave my house much at all." *Id*. She once worked as a home health aide, but left her job in 2009 when she moved. (R. 57-58). She has worked as a cashier, but she also left that job. (R. 57). Plaintiff testified that she was able to perform the functions of the cashier job, but that she "was banging [her] head, . . . and [she] just walked off and didn't go back." (R. 58). She also had trouble keeping pace when the store got busy. *Id*.

Plaintiff received a driver's license when she was around 16 years old. (R. 53-54). She does not drive now, because her license was suspended due to an unpaid speeding ticket. (R. 53-54). Plaintiff has grown children, whom she cared for by herself when they were younger. (*See* R. 22, 63). She currently lives with a roommate. Plaintiff is able to cook and clean. (R. 61, 215). She "tr[ies] to keep things picked up, and cleaned up, and do the laundry, fix something to eat." (R. 64). Plaintiff reported having no problems caring for herself. (R. 65).

She reportedly gets "nervous and panicky" around other people. (R. 62). She stated that her biggest problem with working would be that she gets nervous and flustered around crowds of people. (R. 66). She has issues being around crowds of "a few people," but does

"way better" with one-on-one interaction. (R. 67). Plaintiff shops for groceries, but tries to do so when the store is not too crowded. (R. 68-69). She usually forgets a couple of items, and sometimes, if she can't find an item, she gets frustrated and leaves. (R. 70).

Plaintiff said that she has trouble completing tasks at home, because she gets distracted. (*See* R. 64). She watches television, but stated that she would not be able to describe a 30-minute program after watching it. (R. 65). According to Plaintiff, her problems with concentration and focus have become worse over time. (R. 64).

### B.     Procedural History

Plaintiff filed for SSI benefits on November 14, 2016. (R. 15). Plaintiff's claim was denied initially and on reconsideration. *Id*. Plaintiff requested a hearing, which the Administrative Law Judge (ALJ) held on April 24, 2019. Plaintiff was represented by counsel, and a vocational expert (VE) testified at the hearing. (R. 38, 70-77). The ALJ denied benefits in a decision dated May 16, 2019. (R. 12-36). In a decision dated April 1, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 1-6). As a result, the ALJ's May 16, 2019 decision became the final decision of the Commissioner. (*See* R. 1). Plaintiff then timely appealed to the district court.

## III.   The ALJ's Decision

### A.     Step One

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her protective filing date of November 14, 2016. (R. 17).

6

**B.     Step Two**

At step two, the ALJ found that Plaintiff has severe impairments of degenerative disc disease, obesity, depressive/bipolar disorder, neurocognitive disorder, intellectual disability, and ADHD. *Id*. Plaintiff's degenerative joint disease of the bilateral knees, schizoaffective disorder, and panic disorder with agoraphobia were found to be non-severe.

**C.     Step Three**

At step three, the ALJ determined that Plaintiff's impairments do not meet or medically equal the criteria of any Listing, specifically noting Listings 1.04 (spinal disorder) and 12.00 (mental disorders). (*See* R. 18-20).

In considering mental disorders, the ALJ noted Listings 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar and related disorders), 12.05 (intellectual disorder), and 12.06 (anxiety and obsessive-compulsive disorders). The ALJ evaluated the "paragraph B" criteria following the required psychiatric review technique (PRT).[3] The ALJ found that Plaintiff has a moderate limitation in each of the four "paragraph B" domains: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 18-19). Because Plaintiff does not have at least one extreme or two or more marked limitations, the paragraph B criteria are not satisfied. *Id*. The ALJ also discussed the "paragraph C"

---

[3]     These criteria represent the areas of mental functioning a person uses in a work setting. *See* 20 C.F.R., Part 404, Subpt. P, App'x 1, § 12.00A(2)(b); *see also* 20 C.F.R. § 404.1520a(c)(3), 416.920a(c)(3), *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) (discussing application of the PRT by the ALJ).

criteria (for "serious and persistent mental disorders," *see* Listing 12.00A(2)(c)) and determined that they are not satisfied. (R. 19).

### D.    Step Four

The ALJ determined that Plaintiff has the RFC to perform light work, with

> [n]o climbing [of] ladders, ropes or scaffolds. Stooping, crouching, crawling, kneeling, balancing and climbing of ramps/stairs can all be performed occasionally.

(R. 20-21). Additionally,

> [d]ue to mental impairments, [Plaintiff] is capable of doing only unskilled work consisting of simple and routine tasks with routine supervision that require only that she be able to understand, remember, and carry out simple instructions given verbally or by demonstration. [Plaintiff] can relate to supervisors and coworkers on a superficial and work related basis, and can adapt to a work situation where interaction with others is incidental to the work performed. She should not work at jobs where changes in work routine occur on a regular basis, or where changes in routine are regularly made under circumstances where there is usually little or no notice or opportunity to adjust. No contact with the general public (meaning interaction with the general public is not part of the job duties, and any contact would in most cases be incidental and superficial). [Plaintiff] will, on average of 2-3 times per year, be late for work, have to leave work early, or miss work entirely due to her mental health symptoms.

(R. 21). Because Plaintiff has no past relevant work, the ALJ proceeded to consider the availability of jobs at step five. (R. 31-32).

### E.    Step Five

Based on the VE's testimony as to a hypothetical claimant with Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can perform the requirements of representative occupations, including:

> **Small product assembler**, light, unskilled, specific vocational preparation (SVP) level 2, Dictionary of Occupational Titles (DOT) # 706.684-022, with 190,000 jobs existing in the national economy;
>
> **Packer/inspector**, light, unskilled, SVP level 2, DOT # 559.687-074, with 160,000 jobs nationally; and
>
> **Conveyor line bakery worker**, light, unskilled, SVP level 2, DOT # 524.687-022, with 75,000 jobs existing in the national economy.

(R. 32). The ALJ concluded at step five that Plaintiff is not disabled. *Id*.

## IV.   Discussion

Plaintiff asserts that the ALJ erred by (1) failing to develop an adequate record, (2) improperly discounting Plaintiff's subjective statements regarding her symptoms, and (3) failing to properly assess moderate limitations, resulting in an "invalid" mental RFC. (Doc. 18 at 6-7). In connection with the first alleged error (inadequate record development), Plaintiff also asserts that she "likely meets or equal [sic] a listing for intellectual disability due to her percentile rank in her graduating class paralleling her percentile rank in her IQ as well as her testimony that she had similar difficulties with comprehension, verbal directions, memory, and recall." *Id*. at 9. Accordingly, the Court will consider the ALJ's assessment of the Listings.

### A.   Listings

Plaintiff argues that her mental impairments may meet or medically equal a Listing for intellectual disability. (*See* Doc. 18 at 9). The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from performing any gainful activity. 20 C.F.R. Pt. 404, Subpt. P, App'x 1. The claimant bears the burden to show that her impairment is equivalent to a Listing.

9

*Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). All of the specified medical criteria must be matched to meet a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of [the] criteria, no matter how severely, does not qualify."). The ALJ is required to discuss the evidence and the reasons for determining that the evidence does not satisfy a Listing. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

Here, the ALJ cited Listings 12.02, 12.04, 12.05, and 12.06 in his discussion, and determined that, singly and in combination, Plaintiff's mental impairments do not meet or medically equal the criteria of any of those Listings. (*See* R. 18). With respect to the "Intellectual disorder" Listing 12.05, the ALJ set forth the criteria and analyzed those criteria in light of the record. Listing 12.05A requires all of the following:

1. Significantly subaverage general intellectual functioning evident in [Plaintiff's] cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

2. Significant deficits in adaptive functioning currently manifested by [Plaintiff's] dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

3. The evidence about [Plaintiff's] current intellectual functioning and adaptive functioning and about the history of [Plaintiff's] disorder demonstrates or supports the conclusion that the disorder began prior to [her] attainment of age 22.

The ALJ correctly explained that Listing 12.05A was not satisfied because Plaintiff was able to function at a level to participate in standardized testing during multiple consultative examinations (CEs). (*See* R. 20 (citing mental CEs performed on November

7, 2015; July 18, 2017; and September 2, 2017); *see* R. 288-311).[4] Plaintiff does not address the specific requirements for Listing 12.05A, and she has not attempted to refute the ALJ's finding that she was able to participate in standardized testing. She has likewise not cited any evidence that she has "[s]ignificant deficits in adaptive functioning" manifested by her dependence on others for her personal needs, such as toileting, eating, dressing, or bathing. *See* Listing 12.05A(2). Indeed, the ALJ recited record evidence that Plaintiff is able to dress, bathe, care for her hair, shave, feed herself, and use the restroom without limitations, reminders or encouragement (R. 22), and that she can handle her own personal grooming, clean the house, do laundry, use public transportation, and go shopping by herself. *See id*. Accordingly, substantial evidence supports the ALJ's finding that Plaintiff does not meet all of the criteria of Listing 12.05A.

The ALJ's application of Listing 12.05B was likewise supported by substantial record evidence. Paragraph B of Listing 12.05 requires a claimant to demonstrate, *inter alia*, "[s]ignificant deficits in adaptive functioning currently manifested by an extreme limitation of one, or marked limitation of two" functional areas addressed in the PRT. The ALJ addressed specific evidence in the record supporting his findings of only moderate limitations in each of the paragraph B mental functioning domains of understanding,

---

[4]     In her factual recitation, Plaintiff cites a Montreal Cognitive Assessment (MoCA) administered in connection with the CE performed by Heather Ranger Kobel, Ph.D. in 2017, which reflected a score of 20/30, suggestive of mild cognitive impairment. However, Dr. Ranger Kobel noted that Plaintiff "was fatigued and gave up very easily when performing subtests" and reported that Plaintiff was distracted because "her cell phone frequently sounded text message notifications." (R. 292).

remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing herself. (*See* R. 18-19; *see also* Listing 12.00E).

Plaintiff does not directly dispute the ALJ's findings or analysis under Listing 12.05B. However, she asserts that there is "strong[] evidence[e]" she is "more severely impacted by her mental retardation, depression, schizophrenia, anxiety, and agoraphobia disorders such that she cannot sustain competitive employment." (Doc. 18 at 7). Plaintiff points to her high-school graduation class rank, her IQ, and statements that she has difficulty with comprehension, verbal directions, memory, and recall. *Id*. at 9. The undersigned construes this as an argument that Plaintiff has more than moderate limitations in one or more of the Paragraph B domains.

The ALJ acknowledged Plaintiff's allegations in conducting his analysis of relevant evidence at step three. For example, with respect to understanding, remembering, or applying information, the ALJ cited Plaintiff's function report, in which she alleged that she forgets to take medication, "needs reminders to go places, has problems completing tasks," and has problems with "finishing what she starts, and not following instructions well." (R. 18). However, the ALJ cited evidence that Plaintiff had "logical, sequential, goal-driven thought processes," and "quickly performed Serial 7's" in her examination with Dr. Ranger Kobel, and Plaintiff indicated that she does not need reminders to care for her personal needs and grooming and is able to pay bills and handle her own checkbook. *Id*. The ALJ further considered Plaintiff's allegations in analyzing the record in relation to paragraph B criteria. (*See, e.g.,* R. 19 (noting Plaintiff testified that "she graduated high

school, but had to repeat some classes. . . . She panics and does not like to leave her house. She has concentration problems when reading" but "is able to read and complete a job application, read a newspaper (would need to repeat it), and uses Facebook"; Plaintiff "has problems with instructions due to a lack of focus and memory" and "has problems completing stuff she starts," but "[v]isual is better than verbal"; Plaintiff "is unable to multi-task due to getting sidetracked" and alleges that her problems have worsened over time); R. 25 (noting Joseph James, Psy.D. assessed 25/30 points on a mental status examination, "suggesting difficulties severe enough to inhibit [Plaintiff's] ability to demonstrate basic cognitive functions[,] and a significantly below average IQ"; Minor Gordon, Ph.D. recorded a full-scale IQ of 62 and diagnosed mild mental retardation)).

While acknowledging the above evidence, the ALJ also identified other medical evidence and subjective statements supporting the finding that Plaintiff's limitations are moderate.[5] For instance, mental status exams by Dr. James and Dr. Gordon found Plaintiff's "attention and concentration were sufficient for the gathering of pertinent details and found her to be attentive." (R. 19). On several occasions, Plaintiff was observed to be alert and/or oriented; she spoke with a normal rate, rhythm, and tone; she made good eye contact; and she demonstrated "logical, sequential, goal[-]driven thought processes." (R. 18-19). This is substantial evidence supporting the ALJ's finding of moderate limitations in the Paragraph B domains.

---

[5]   As the ALJ's decision explains, a "marked" limitation means "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." (R. 18).

"The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability." *Branum,* 385 F.3d at 1271. Where substantial evidence supports the ALJ's decision, as it does here, the fact that Plaintiff would weigh the evidence differently does not constitute reversible error. *See Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007) (on appeal, court reviews only sufficiency of evidence, not its weight); *Lax*, 489 F.3d at 1084 (court may not reweigh evidence and displace agency choice between two fairly conflicting views). Accordingly, Plaintiff has shown no reversible error.

### B.     Duty to Develop the Record

Plaintiff argues that that the ALJ failed to develop an adequate record. An ALJ "has a basic obligation in every social security case to ensure that an adequate record is developed . . . consistent with the issues raised." *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360–61 (10th Cir. 1993) (citations, quotations, and brackets omitted). "The duty to develop the record is limited to 'fully and fairly develop[ing] the record as to material issues.'" *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) (quoting *Baca v.* Department *of Health & Human Servs.*, 5 F.3d 476, 479–80 (10th Cir. 1993)).

Dr. James rendered provisional diagnoses of persistent depressive disorder and social anxiety disorder. (R. 298). He indicated "[o]ther diagnoses that need to be ruled out," including bipolar disorder/psychosis and borderline IQ/mild intellectual disability. *Id*. He opined that additional testing, including the Minnesota Multiphasic Personality Inventory (MMPI) and standardized intelligence testing, were needed to develop these findings. *Id*.

14

Plaintiff argues that, based on Dr. James's opinion, the ALJ was required to obtain further testing. In fact, Plaintiff had additional IQ testing after Dr. James's July 2017 evaluation: in September 2017, Dr. Gordon performed a psychological CE including IQ testing. (R. 307-11). The ALJ summarized Dr. Gordon's findings, noting that Dr. Gordon administered the Wechsler Adult Intelligence Scale-III, on which Plaintiff obtained a full-scale IQ of 62, or "in the middle of the mild range of mental retardation." *Id.*

Dr. James's recommendation of MMPI testing did not require the ALJ to order an additional examination.[6] Dr. James indicated that additional testing would be needed to confirm or rule out additional mental health diagnoses. (*See* R. 298). However, the focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."); *e.g.*, *Scull v Apfel*, 221 F.3d 1352, 2000 WL 1028250, at *1 (10th Cir. 2000) (unpublished) (disability determinations turn on the functional consequences, not the causes of a claimant's condition).

Here, as the ALJ noted, Dr. James found moderate impairments in Plaintiff's cognitive ability, memory, and ability to interact socially adapt; however, he opined that Plaintiff can adequately concentrate and persist in work or school-related tasks. (R. 298-299; *see* R. 29). Dr. James found that these limitations "seem[] to be a valid and typical

---

[6]     The MMPI is "the most common psychometric test devised to assess personality traits and psychopathology." *See Minnesota Multiphasic Personality Inventory*, https://www.ncbi.nlm.nih.gov/books/NBK557525.

assessment of [Plaintiff's] cognitive and mental functioning," noting that her cooperation was adequate, and her performance "did not seem to include intentional or misleading over/underreporting," although he noted the "potential does exist that . . . receiving benefits might disincentivize the pursuit of improving mental health." (R. 299).

The ALJ's decision addressed four mental consultative examinations in the record, including Dr. James's report. The ALJ accorded great weight to Dr. James's opinion that Plaintiff is moderately impaired in various functional areas, including in her capacity to execute tasks of daily living, to understand and remember work-related activities, and to socially interact and adapt in a work-related environment. (R. 29). However, he noted that Dr. James found Plaintiff retains an adequate ability to concentrate and persist in work- or school-related tasks. *Id*. The ALJ also noted other examiners' findings supporting his mental RFC determination. *Id*. The ALJ rejected Dr. James' opinion that Plaintiff is unable to engage in common work-related mental tasks, noting record evidence that Plaintiff graduated from high school without the use of special education classes, obtained her driver's license and a CNA license, and that other examiners found her to be "alert and/or oriented x 3/4, with logical, sequential, goal-driven thought processes and normal mentation and thought process." *Id*.

An ALJ need not "exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning"; rather, "[t]he standard is one of reasonable good judgment." *Hawkins,* 113 F.3d at 1168; *cf. Wendelin v. Astrue*, 366 F. App'x 899, 904 (10th Cir. 2010) (unpublished) (rejecting argument that ALJ was required to develop record further where claimant failed to explain how alleged impairments limited her functioning).

Here, the ALJ's decision reflects a reasonable determination that the record was adequate without further testing.

Finally, Plaintiff argues that the ALJ erred by not obtaining a medical expert to determine whether Plaintiff meets or equals a Listing for intellectual disability. (Doc. 18 at 10).[7] Under the Commissioner's policy guidance, an ALJ has discretion to obtain medical expert opinion evidence in appropriate circumstances, such as when the ALJ "[b]elieves [a medical expert] may be able to suggest additional relevant evidence because there is reasonable doubt about the adequacy of the medical record"; "[b]elieves [a medical expert] may be able to clarify and explain the evidence or help resolve a conflict because the medical evidence is contradictory, inconsistent, or confusing"; "[i]s determining the claimant's residual functional capacity, e.g., the ALJ may ask the [medical expert] to offer an opinion about the claimant's functional limitations and abilities as established by the medical evidence of record"; or to "[d]etermine the onset of an impairment." HALLEX I-2-5-34(A)(2). However, Plaintiff points to no such circumstances here, and—as set forth above—the ALJ reasonably found the existing record was sufficient to make a disability determination. Nothing further was required.

## C.    Subjective Statements

Plaintiff next contends that the ALJ improperly minimized her allegations regarding her schizophrenia and related symptoms. A claimant's subjective complaints of pain or

---

[7]    Unlike a consultative examiner, a medical expert does not examine the claimant. *See* Hearings, Appeals, and Litigation Law Manual (HALLEX) I-2-5-34(A)(2), 1994 WL 637370 (updated Jan. 21, 2020).

other symptoms, alone, cannot establish disability. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). In assessing the intensity and persistence of a claimant's pain, the Commissioner will consider objective medical evidence and will "carefully consider any other information [a claimant] may submit about [their] symptoms." *Id*. §§ 404.1529(c), 416.929(c).

Consistency determinations "are peculiarly the province of the finder of fact." *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 2000); *see also White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001) (ALJ's evaluation of symptom allegations "warrant particular deference"). However, the ALJ must explain "the link between the evidence and" consistency determination. *Kepler*, 68 F.3d at 391; *see also* SSR 16-3 (ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms"). Courts "will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue,* 602 F.3d 1136, 1144 (10th Cir. 2010) (internal citation omitted).

In his decision, the ALJ acknowledged Plaintiff's schizophrenia diagnosis, the fact that she took medication for schizophrenia, and her statement in 2018 that "she could barely go to town or public places." (R. 21-22). The ALJ also recounted Plaintiff's testimony that she "panics and does not like to leave her house," crowds make her nervous, and that she has panic attacks daily. (R. 22). However, the ALJ found that Plaintiff's schizoaffective disorder does not significantly limit her ability to perform basic work activities and

18

therefore is non-severe. (R. 17). The ALJ also found that the medical evidence did not fully support the alleged limitations.

Substantial evidence supports this conclusion. For example, the ALJ recounted consulting examiner's findings relating to Plaintiff's alleged symptoms of paranoia and auditory hallucinations. Dr. Ranger Kobel indicated that Plaintiff reported "anxiety, difficulty concentrating, depression, paranoia, mood changes, hearing voices (sometimes), and schizophrenia." (R. 22). However, the same records show that Plaintiff needed no assistance with her personal care and grooming. *See id*. Plaintiff also "denied thoughts of harming herself or others, denied hallucinations, denied thought disorders," responded appropriately to questions related to judgment and insight, and was able to quickly perform serial 7s. (R. 23). She struggled with memory, attention, focus and concentration, which Dr. Ranger Kobel attributed partly to distractions from Plaintiff's cell phone, in addition to depression and fatigue. *Id*. Dr. Ranger Kobel found Plaintiff "alert, oriented x 4, able to complete her screening forms, able to comprehend the questions, able to follow basic three-step instructions," and observed that she "made good eye contact, was cooperative," and spoke with a normal rhythm, rate, and tone. *Id*.

Thus, the ALJ reasonably considered Plaintiff's statements regarding symptoms of schizophrenia. Plaintiff argues that the ALJ failed to mention other portions of her testimony and statements to providers. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as

significantly probative evidence he rejects.") *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). As set forth above, the ALJ addressed Plaintiff's subjective statements and provided valid reasons for finding they were not fully consistent with the medical evidence in the record. This satisfied the ALJ's duty to evaluate Plaintiff's subjective statements. *See Kepler*, 68 F.3d at 391.

Plaintiff suggests that the ALJ failed to adhere to a set of agency guidelines regarding considerations specific to schizophrenia cases, citing an internal agency memorandum dated September 5, 2012. (Doc. 18 at 11, citing Administrative Message AM-12048).[8] However, the guidance in this memorandum is consistent with the ALJ's analysis in this case. (*See, e.g., id.* "Disability examiners should remember that adjudication is not diagnosis driven. . . . . It is the adjudicator's responsibility to assess whether [a claimant's] symptoms, independent of specific diagnosis, significantly limit the claimant's ability to perform one or more of the basic work activities required for most jobs." The ALJ's assessment is consistent with the memorandum. (*See, e.g.,* R. 23, 27-31).

Plaintiff also points to a written statement submitted by her friend, A.K., indicating that Plaintiff experiences paranoia, goes shopping only rarely, refuses to meet new people, and limits her outings. (*See* R. 221-224). In fact, the ALJ acknowledged these symptoms, and concluded that the record evidence, nonetheless, supports the mental RFC

---

[8]     Plaintiff also appears to invoke the Listing for schizophrenia spectrum and other psychotic disorders, Listing 12.03. (*See* Doc. 18 at 11, citing "SSR 12.03"). However, Plaintiff's brief does not identify the criteria of this Listing or address it substantively. Accordingly, to the extent Plaintiff seeks to assert that she meets or equals Listing 12.03, she has waived that argument. *See Wall v. Astrue*, 561 F.3d 1048, 1066-67 (10th Cir. 2009).

determination, as explained above. The ALJ accorded only partial weight to A.K.'s statement, "as it is a lay opinion based upon casual observation, rather than objective medical examination and testing," and found that it "certainly does not outweigh the accumulated medical evidence regarding [Plaintiff's] functional abilities." (R. 30). This explanation is reasonable and fulfilled the ALJ's duty with respect to A.K.'s statement. *See Kepler*, 68 F.3d at 391; *see also* 20 C.F.R. § 416.929.

### D.    Mental RFC

Plaintiff asserts that, in determining Plaintiff's RFC, the ALJ failed to account for her moderate limitations in social functioning and in concentration, persistence, and maintaining pace.  She suggests that her impairments would cause her to miss days of work and/or be unable to maintain the pace and persistence required for competitive work. (*See* Doc. 18 at 14-15). Plaintiff does not support that argument with any citation to the record establishing that she has greater limitations. *See id*. at 13-15.

It is well-settled in the Tenth Circuit that "the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.'" *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) (quoting SSR 96-8p, 1996 WL 374184, at *4); *see also White v. Colvin*, No. 15-cv-27-CVE-FHM, 2016 WL 1175492, at *5 (N.D. Okla. Mar. 23, 2016) (unpublished) (citing *Suttles v. Colvin*, 543 F. App'x 824, 826-27 (10th Cir. Oct. 31, 2013); *Beasley v. Colvin*, 520 F. App'x 748, 754 (Apr. 10, 2013)) ("[T]he law is clearly settled that findings as to concentration, persistence, pace at steps two and three do not automatically apply at step four when the ALJ is formulating a claimant's RFC."); *see also*

*Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014) (unpublished) (concluding that a moderate limitation in concentration, persistence, or pace "does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment in this case").

Here, the ALJ's RFC determination limited Plaintiff to unskilled work, which does not require the ability to set realistic goals or make plans independently of others. *See, e.g.*, *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) (rejecting Plaintiff's argument that a limitation to unskilled work cannot accommodate severe mental impairments). Similarly, "concentration is not critical" for unskilled work. SSA Program Operations Manual System (POMS) DI 25020.010(B)(3); *see also Nelson v. Colvin*, 2015 WL 5231131, at *2-3 (W.D. Okla. Sept. 8. 2015) (unpublished) (concluding that the ALJ reasonably found the claimant was capable of simple instructions, where the reviewing physician opined that the claimant was moderately limited in her ability to maintain attention and concentration for extended periods). Furthermore, the ALJ limited Plaintiff's RFC to simple and routine tasks and simple instructions; relating to supervisors and co-workers only on a superficial and work-related basis; no contact with the public; and infrequent changes in work routine. (R. 21). As such, the mental RFC adequately accounted for the mental limitations supported by the medical evidence in the record.

## V.    Conclusion and Recommendation

The undersigned finds that the ALJ's decision is supported by substantial evidence and reflects the application of proper legal standards. The undersigned therefore **recommends** that the decision of the Commissioner finding Plaintiff not disabled be **affirmed**.

22

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation within 14 days. Any such objections must be filed on or before March 1, 2022.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule," which provides that the failure to make timely objections to the magistrate judge's findings or recommendations waives appellate review of factual and legal questions. *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

DATED this 15th day of February, 2022.

Christine D. Little
United States Magistrate Judge

23