UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JACKIE A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-CV-0253-NDF-CDL |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Commissioner of Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Now before the Court is the Report and Recommendation (Dkt. # 23) of the magistrate judge recommending that the Court affirm defendant's decision to deny plaintiff's claim for disability benefits. Plaintiff has filed an objection (Dkt. # 24) to the report and recommendation, and she asks the Court to reject the report and recommendation and find in her favor. Defendant has filed a response (Dkt. # 26) to plaintiff's objection, and the report and recommendation is ripe for review.

**I. BACKGROUND**

Plaintiff filed a claim with the Social Security Administration seeking disability benefits, and she alleged that her primary disabilities were schizophrenia, panic disorder, anxiety, depression, bi-polar, and ADHD. Dkt. # 14, pp. 184-192, 207.[1] Plaintiff's alleged disability began on November 14, 2016. *Id*. at p. 188. Plaintiff's claim was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge (ALJ). *Id*. at pp. 79, 99, 124, 138.

---

[1] All page numbers refer to the docket page number, not the administrative record page number.

On April 24, 2018, plaintiff appeared at a hearing before an ALJ where she was represented by counsel. *Id*. at p. 42. Plaintiff's attorney stipulated to close the record and that he saw the case as "a mental impairment case." *Id*. at pp. 46-47. During the hearing, plaintiff testified about her educational experience and plaintiff reported she had trouble concentrating and focusing in class and, while she could read, she couldn't tell her teacher what she read. *Id*. at p. 60. Plaintiff passed her test to receive a driver's license the first time. *Id*. at pp. 60-61. She received her CNA in her 20's. *Id*. at p. 61. Plaintiff testified she has a panic disorder and, with the schizophrenia, she doesn't leave her house much. *Id*. She testified she was not currently taking medication. *Id*. at p. 64. Plaintiff testified her lack of focus caused her to not complete tasks. Plaintiff can do a little simple math. *Id*. at p. 65. She has no problem maintaining herself in a household and cooking, but she doesn't do well around other people because she gets nervous and panics. *Id*. at 66.

The ALJ called a vocational expert (VE) to testify. The ALJ did not address past relevant work. *Id*. at p. 75. The ALJ asked the VE to consider a hypothetical person who is of the same age, work history and education as plaintiff, who could do a full range of light work with some exertional limitations but, due to mental impairments, the person is capable of doing only unskilled work, consisting of simple and routine tasks with routine supervision that requires only that she be able to understand, remember and carry out simple instructions, given verbally or by demonstration. The person can relate to supervisors and coworkers on a superficial and work-related basis and can adapt to a work situation where interaction with others is incidental to the work performed. The person should not work at jobs where changes in work routine occur on a regular basis, or where changes in routine are regularly made under circumstances where there is usually little or no notice or opportunity to adjust. No contact with the general public,

and any contact would, in most cases, be incidental and superficial. The person will, on average of two to three times per year, be late for work, have to leave work early, or miss work entirely due to her mental health symptoms. *Id*. at pp. 76-77.

The VE responded that such a hypothetical individual would be able to perform the job of a Small Product Assembler, Packer/Inspector, and Conveyor Line Bakery Worker. *Id*. at p. 77.

The ALJ changed the hypothetical only as to the exertional capabilities by reducing those to sedentary (instead of light). *Id*. The VE testified such a hypothetical individual would be able to perform the jobs of an Optical Goods Assembler, a Table Worker, and a Medical Product Assembler. *Id*. at p. 78.

Finally, the ALJ changed the hypothetical again to be the same as the second except that the mental impairments are substantially severe with more burdens and limitations. *Id*. at p. 79. The VE testified there were no jobs in the national economy that such a person would be capable of doing. *Id*.

The ALJ entered a written decision denying plaintiff's claim for disability benefits. *Id.* at 19-36. Plaintiff had not engaged in substantial gainful employment since November 14, 2016, and she had the following severe impairments: degenerative disc disease; obesity; depressive/bipolar disorder; neurocognitive disorder; intellectual disability; and attention deficit hyperactivity disorder. *Id*. at p. 21. Plaintiff alleged that she had the impairments of degenerative joint disease of the bilateral knees, schizoaffective disorder and panic disorder with agoraphobia, but the ALJ found that these impairments were non-severe. *Id.* The ALJ considered all impairments and found no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.C. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926). *Id*. The basis for this finding was the

lack of any acceptable medical source mentioning findings equivalent in severity to the criteria of the listed impairments. *Id*. at pp. 21-22. More specifically, as to plaintiff's mental impairments, the ALJ found that plaintiff has a moderate limitation. These mental impairments include the following: understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself.

The ALJ discussed plaintiff's medical records, notably those of Dr. Greer and Dr. Hayes who treated plaintiff's mental impairments. In general, plaintiff's treatment plan was medication management and therapy, including counseling to quit abusing methamphetamine. *Id*. at pp. 27-28 & 30. The ALJ also discussed various consultative examinations/evaluations of plaintiff's mental impairments by four different doctors: Heather Ranger Kobel, Joseph James, Minor W. Gordon, and Sully Drotar.[2] *Id*. at pp. 26-30. The opinions of Dr. Kieth McKee and Dr. Thomas VanHoose were also summarized, with "great weight … given to the superficial work contact with supervisors and coworkers and no work with the general public because these are consistent with the other medical evidence [summarized]." *Id*. at p. 32. Great weight was also given to Dr. Kobel's opinion that plaintiff was unable to manage her own finances. *Id*. Dr. James' opinion that plaintiff "was unable to engage in common work/learning-related mental tasks" was given little weight because plaintiff graduated high school without use of special education classes, obtained her driver's license, obtained her CNA, and other examinations found plaintiff to be alert and/or oriented with logical sequential, goal-driven thought processes and normal mentation and thought process. *Id*. at p. 33. However, great weight was given to Dr. James' opinions assigning moderate impairments on understanding, remembering, concentrating

---

2 Dr. John T. Atwood also performed a consultative evaluation of plaintiff, dated November 20, 2013. Dkt. # 14, p. 289-291.

and persisting, and social interaction. *Id*. Finally, little weight was given to many opinions of Dr. Gordon as inconsistent with other consultative examinations. *Id*. at 33-34.

Based on a preponderance of the evidence as summarized by the ALJ, a residual functional capacity (RFC) was determined, which was identical to the first hypothetical posed to the VE at the hearing. *Id*. at pp. 25 & 30-31. The ALJ determined that plaintiff had no past relevant work, but that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. *Id*. at pp. 35-36.

Plaintiff sought review of the ALJ's adverse decision by the Appeals Council, but the Appeals Council found no basis under its rules to review the decision. *Id.* at 5-7. Plaintiff filed this case seeking judicial review of the denial of her claim for disability benefits, and the matter was referred to a magistrate judge for a report and recommendation. The magistrate judge has recommended that the Commissioner's decision be affirmed.

## II. LEGAL STANDARD

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation. *Schrader v. Fred A. Ray, M.D., P.C.*, 296 F.3d 968, 975 (10th Cir. 2002); *Vega v. Suthers*, 195 F.3d 573, 579 (10th Cir. 1999); 28 U.S.C. § 636(b)(1). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

## II.  DISCUSSION

Plaintiff objects to the magistrate judge's report and recommendation that the Commissioner's decision to deny her claim for disability benefits should be affirmed. Dkt. # 24. She argues that the ALJ minimized and ignored evidence of significant mental disability.  She also argues the ALJ failed to evaluate how plaintiff's agoraphobia and panic attacks from schizophrenia can impact employability.  Plaintiff argues the ALJ failed to order additional examinations identified by consulting physicians that would have given objective evidence on the functional impacts of plaintiff's disorders.  Further, plaintiff argues her right to evaluation under schizophrenia given that she received diagnoses of schizoaffective disorder.  These errors led to an incorrect RFC in terms of need for frequent rest breaks and missed days of work attendance caused by agoraphobia and panic attacks as well as pain and fatigue findings from Dr. Drotar's examination.  Plaintiff argues she has met her burden to show she would likely be off task or absent one third of her worktime because of her physical pain, agoraphobia, low IQ, and poor social skills. *Id*. at p. 8.

The Social Security Administration has established a five-step process to review claims for disability benefits. *See* 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five-step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [*Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id.* An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. *See*

> *id.* Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy. *See id.*

*Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

At step five, the ALJ must consider a claimant's RFC, age, education, and work experience to determine if other work exists that a claimant is able to perform. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). If the claimant can adjust to work outside of her past relevant work, the ALJ shall enter a finding that the claimant is not disabled. 42 U.S.C. § 423(d)(2)(A). However, the ALJ must find that a claimant is disabled if insufficient work exists in the economy for an individual with the claimant's RFC. *Allen*, 357 F.3d at 1144. Defendant bears the burden to present sufficient evidence to support a finding of not disabled at step five of the review process. *Emory v. Sullivan*, 936 F.2d 1092, 1094 (10th Cir. 1991).

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994), *superseded by regulation on other grounds*. "It requires more than a scintilla, but less than a preponderance. . . . The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal citations omitted). The Court must meticulously examine the record as a whole and consider any evidence that detracts

from the Commissioner's decision. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). However, so long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1152 (2019).

While plaintiff's arguments are repetitive and somewhat difficult to discern, the Court understands that she complains that the ALJ minimized or ignored evidence of greater mental impairments (low IQ, agoraphobia and panic attacks from schizophrenia, and poor social skills) which led to an incorrect RFC. Plaintiff also complains that the ALJ failed to develop an adequate record. Finally, plaintiff mentions her pain and fatigue as not considered in the RFC.

A.     Mental Impairments

As noted above, the ALJ assigned moderate limitations in plaintiff's ability to: (1) understand, remember or apply information; (2) interact with others; (3) concentrate, persist or maintain pace; and (4) adapt or manage oneself. In support of the ALJ's finding of moderate limitations, the ALJ identified records stating plaintiff had logical, sequential, goal-driven thought processes; was alert and/or oriented; had intact recent/remote memory; was cooperative with an appropriate manner and attitude; spoke with normal rate/rhythm/tone, made good eye contact; participated in standardized testing at all of her mental status examinations, quickly performed Serial 7's; had appropriate/good insight and judgment; was casually dressed, nicely groomed with nicely done makeup, and appeared well-kempt, clean and neatly dressed and groomed. Dkt. # 14, p. 22-24. Plaintiff identifies nothing in the record supporting a claim that she has at least one extreme or two marked limitations in these functional areas for purposes of satisfying the "paragraph B" criteria for a listed impairment. The ALJ also considered whether the "paragraph C" criteria for a listed impairment were satisfied and found they were not. Again, plaintiff identifies no basis for a different finding.

Plaintiff also argues the ALJ erred in failing to account for the effects of plaintiff's schizoaffective disorder which causes agoraphobia and panic attacks that would impact her RFC. Plaintiff argues that she endorsed these symptoms to her doctors, received diagnoses of schizoaffective disorder, and took medications to assist her with symptoms. The ALJ found plaintiff's schizoaffective disorder and panic disorder with agoraphobia were non-severe. *Id*. at p. 21. The ALJ also discussed the "interacting with others" area of functioning, and assessed plaintiff with moderate limitations, reciting the evidence relating to this functional area. The ALJ discussed the objective evidence relating to plaintiff's schizoaffective disorder and panic disorder, and imposed the following significant restrictions within the RFC:

> [Plaintiff] can relate to supervisors and coworkers on a superficial and work related basis, and can adapt to a work situation with interaction with others that is incidental to the work performed. However, she should have no contact with the general public (meaning interaction with the general public is not part of the job duties, and any contact would in most cases be incidental and superficial).

*Id*. at p. 25 & 31. Because the objective evidence showed that plaintiff spoke with normal rate/rhythm/tone, made good eye contact, was cooperative and had an appropriate manner and attitude, the ALJ found that greater limitations regarding social functioning were not supported. *Id*. at p. 31.

The Court finds the ALJ's assignment of moderate limitations due to plaintiff's mental impairments is supported by substantial evidence. Plaintiff's request that this Court find greater limitations is an invitation to reweigh the evidence and substitute this Court's judgment for that of the ALJ, which is not proper. Finally, plaintiff's argument focusing on diagnoses and treatment relating to schizoaffective disorder is not persuasive of greater limitations. The ALJ found plaintiff's schizoaffective disorder and panic disorder with agoraphobia to be non-severe, adequately explained the bases for this finding, and also adequately explained why greater

limitations regarding social functioning were not supported by the relevant objective evidence in the record.

  B. <u>Sufficiency of the Record</u>

Plaintiff argues the ALJ erred in not ordering additional examinations, more specifically by failing to order the MMPI.[3] Plaintiff argues such a test would have given objective evidence on the functional impacts of her disorders.

"When the evidence [the agency] receive[s] from [a claimant's] treating physician or psychologist or other medical source is inadequate for [the agency] to determine whether [the claimant is] disabled, [the agency] will need additional information to reach a determination or a decision." *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008), quoting 20 C.F.R. § 404.1512(e).

The consultative evaluation from Dr. James, dated July 25, 2017, offered diagnostic impressions of persistent depressive disorder, provisional, and social anxiety disorder, provisional. Dkt. # 14, p. 302. He stated two additional tests were needed: MMPI-2 to assess the presence and severity of the above-mentioned diagnoses; and WAIS/WISC to assess the individual's intelligence. *Id*. Two additional consultative examinations were performed after the one completed by Dr. James – one from Dr. Minor Gordon dated September 2, 2017 and one from Dr. Sully Drotar dated October 21, 2017. Dr. Gordon conducted the WAIS test and assessed plaintiff's level of intelligence at about the middle of the mild range of mental retardation. *Id*. at pp. 313-14. Based on this assessment, the ALJ limited plaintiff to unskilled

---

3 The MMPI (or MMPI-2) is the Minnesota Multiphasic Personality Inventory. This "is the most common psychometric test devised to assess personality traits and psychopathology. … The most common treatment application of the test by providers is establishing or reevaluating care for an ambiguous clinical picture." https://www.ncbi.nlm.nih.gov (accessed April 9, 2022).

work. *Id*. at p. 31. The ALJ discussed the objective evidence relating to the severity of plaintiff's social anxiety disorder and assigned plaintiff a moderate limitation (under the functional area of "interacting with others"). *Id*. at p. 22. Given that plaintiff underwent five consultative examinations from 2013 through 2017, and the ALJ assigned moderate limitations to reflect the presence and severity of plaintiff's mental impairments, this Court cannot conclude the medical evidence was inadequate. As discussed more fully above, plaintiff points to no objective medical evidence not considered and evaluated by the ALJ which suggests that her mental impairments limited functioning more than the restrictions imposed by the ALJ in the RFC. Consequently, the ALJ had adequate medical source evidence to determine whether plaintiff is disabled, and was not required to order additional consultative examinations or psychometric tests.

   C. <u>Pain and Fatigue</u>

Finally, without much discussion, plaintiff complains that the RFC fails to account for her pain and fatigue which, when combined with her mental impairments, would eliminate her ability to perform jobs that exist in significant numbers in the national economy. A consultative examination was completed by Dr. Drotar on October 21, 2017 which noted plaintiff's chief complaint as schizophrenia and panic. *Id*. at p. 319. Among other assessments, Dr. Drotar assessed plaintiff with back pain with activity and knee pain "which slows her down, which she has not yet sought medical attention for." *Id*. at p. 319 & 321. However, at the hearing, plaintiff's counsel specifically stated that he saw the case "as a mental impairment case." *Id*. at p. 47. The ALJ assessed plaintiff's degenerative disc disease as severe, but her degenerative joint disease of the knees as non-severe. *Id*. at p. 21. The degenerative disc disease did not satisfy Listing 1.04. *Id*. at p. 22. The RFC limited plaintiff to light work with some additional

exertional limitations. *Id*. at p. 25. Plaintiff's request for Appeals Council review states only, "the decision to deny claimant benefits is not supported by the evidence." *Id*. at p. 186.

In proceedings before the magistrate judge, plaintiff advanced three specific claims of error by the ALJ, but she did not advance as error any issue mentioning pain and fatigue.[4] "Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) (citation omitted). The Court considers the issue of pain and fatigue to be waived. Even if not waived, however, plaintiff has not shown that the ALJ failed to properly evaluate the medical evidence when formulating plaintiff's RFC. Consequently, the Court considers this argument by plaintiff either to be waived or to lack merit.

For all the above-stated reasons, this Court's review of the record demonstrates that the ALJ applied the correct legal standard and the decision to deny benefits is supported by substantial evidence.

**IT IS THEREFORE ORDERED** that the Report and Recommendation (Dkt. # 23) is **ACCEPTED**, and the Commissioner's decision to deny plaintiff's claim for disability benefits is **AFFIRMED**. A separate judgment is entered herewith.

**DATED** this 11th day of April, 2022.

_____
NANCY D. FREUDENTHAL
UNITED STATES DISTRICT JUDGE

---

4 By way of background, plaintiff alleges the ALJ "failed to evaluate the impact of pain caused by Claimant's positive straight leg raise showing evidence of further disabling conditions caused by pain from nerve impingement, and the pain findings from her physical examination by Dr. Sully Drotar." Dkt. # 18, p. 5. However, this is not further addressed as a claim of error.